## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.** |
| **v.** | ) ) | **Demand for Jury Trial** |
| **WALMART INC.,** | ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act, as amended, ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Marvin Montoya and Raymond Moore, who were adversely affected by such practices. As alleged with greater particularity below, Defendant Walmart Inc. violated the ADA by failing to make reasonable accommodations to Marvin Montoya's and Raymond Moore's known physical limitations and by constructively discharging their employment on the basis of disability.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Kansas.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission ("Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Walmart Inc. ("Walmart") has continuously been doing business in the State of Kansas and the City of Olathe, and has continuously had at least 15 employees.

5.     At all relevant times, Walmart has continuously been an employer engaged in industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

6.     At all relevant times, Walmart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.     More than thirty days prior to the institution of this lawsuit, Marvin Montoya and Raymond Moore timely filed charges of discrimination, Charge Nos. 563-2020-01149 and 563-2020-01147, respectively, with the Commission. Both charges alleged violations of Title I of the ADA by Walmart.

8.     The Commission sent Walmart timely notice of the charges filed by Montoya and Moore.

9.     On September 19, 2022, the Commission issued to Walmart Letters of Determination finding reasonable cause to believe that Walmart violated the ADA. The Commission invited Walmart to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.    On April 25, 2023, the Commission issued to Walmart Notices of Failure of Conciliation advising Walmart that the Commission was unable to secure from Walmart a conciliation agreement acceptable to the Commission.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12.     Marvin Montoya and Raymond Moore are qualified individuals with disabilities as defined under the ADA. Both Montoya and Moore are deaf and are substantially limited in hearing. To communicate without the ability to hear, Montoya and Moore use American Sign Language, written communication, and other assistive technology. Neither is proficient in reading lips.

13.     On or about March 29, 2019, Montoya began his employment with Walmart as an overnight stocker at Store #4475 in Olathe, Kansas.

14.     On or about July 20, 2019, Moore began his employment with Walmart as an overnight stocker at Store #4475 in Olathe, Kansas.

15.     At the time of hire and at all relevant times, Walmart was aware of Montoya's and Moore's deafness.

16.     To enable effective communication, Montoya and Moore requested American Sign Language ("ASL") interpreters for use during orientation, meetings, and at various times throughout their employment.

17.     Specifically, Montoya and Moore requested ASL interpreters for meetings within their department. They also requested ASL interpreters for routine safety meetings.

18.     Additionally, throughout their employment at Walmart, Montoya and Moore requested that managers and others communicate with them in writing.

19.     In response to their requests for interpreter services, Walmart informed Montoya and Moore that it could not afford to provide them with qualified ASL interpreters.

20.     Instead of providing qualified ASL interpreters, Walmart relied on David Walters-Gates, a supervisor and assistant manager, to interpret for Montoya and Moore.

21.     David Walters-Gates is not a qualified ASL interpreter, he was unable to effectively interpret for Montoya or Moore, and he was not employed for the purpose of providing ASL interpretation.

22.     Walmart routinely held meetings where important information was communicated verbally and no interpretation was provided for Montoya and Moore. As a result, Montoya and Moore could not understand what was being communicated during these meetings, and they were forced to observe the meetings with no means by which to comprehend the material.

23.     By way of example, on at least one occasion, a safety meeting was held to discuss an employee's recent workplace injury and strategies for avoiding similar injuries in the future. Because Montoya and Moore were not provided with ASL interpretation for the meeting, neither understood the information being communicated. It was only later, after the meeting, that they learned through a fellow employee that the meeting was about safety.

24.     Despite Walmart stating that Walters-Gates was to provide ASL interpretation for Montoya and Moore, Walters-Gates made it clear to employees and managers alike that he was not a qualified ASL interpreter and that he knew very little sign language.

25.     By way of example, when a manager asked Walters-Gates to interpret for Montoya and Moore, Walters-Gates would frequently remind the manager that he was not fluent in ASL.

26.     Walters-Gates's limited proficiency in ASL exacerbated the lack of communication Montoya and Moore experienced at Walmart.

27.     Wayne Thornberg, assistant manager and a supervisor to Montoya and Moore, was aware that Walters-Gates could not communicate effectively in ASL and that Montoya would often become frustrated with his interpretation as a result.

28.     Montoya and Moore also asked Walmart to communicate job-related information, including their nightly job assignments, in writing.

29.     Despite their request, Walmart managers frequently failed to effectively communicate in writing and sometimes refused to communicate in writing at all.

30.     In particular, assistant managers Austin Duvall, Adam (last name unknown), Wayne Thornberg, and Kean (last name unknown) refused to communicate with Montoya and Moore in writing despite multiple and repeated requests from both employees.

31.     By way of example, Duvall, Adam (last name unknown), Thornberg, and Kean (last name unknown) refused to provide Montoya and Moore with written instructions regarding their nightly tasks.

32.     When Moore asked for written instructions, managers often responded with "never mind" and walk away. As a result, Moore's work assignments differed from those assigned to other associates.

33.     Walmart's failure to provide Montoya and Moore with reasonable accommodations negatively impacted their employment. For instance, it led to confusion and misunderstandings concerning training requests, disciplinary actions, and work assignments.

34.     Specifically, by way of example and not meant as an exhaustive list, Walmart's failure to provide effective communication and / or ASL interpretation caused unnecessary confusion when Montoya received a write-up for a mistake he allegedly made, the contents of which did not adequately

or clearly communicate the reason for the write-up. Consequently, Montoya was unable to understand the reason for the write-up or how to prevent similar corrective action in the future.

35.     Walmart's failure to provide Montoya and Moore with reasonable accommodations also left both employees feeling ostracized and demeaned.

36.     By way of example, but not meant to serve as an exhaustive list, on at least one occasion, Montoya asked management to communicate in writing and when management refused, employees in the vicinity began laughing while looking at Montoya.

37.     Without effective ASL interpretation and written communication, Montoya and Moore could not understand their managers and were often made to watch the managers talk at them with no means by which to understand what was being said.

38.     Based on the discriminatory practices they experienced, including the lack of effective communication and the intolerable, materially adverse conditions to which they were subjected, Moore resigned in March 2020, and Montoya resigned in November 2021.

39.     Walmart constructively discharged Montoya and Moore from employment.

## STATEMENT OF CLAIMS

### COUNT I

### (ADA – Failure to Accommodate Montoya)

40.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

41.     Montoya is a qualified individual with a disability as defined in the ADA because he is deaf, which substantially limits his hearing.

42.     Walmart was aware of Montoya's deafness.

43.     Montoya is qualified and able, with or without reasonable accommodation, to perform the essential functions of the position of overnight stocker at Walmart.

44.     Montoya requested reasonable accommodations, namely, ASL interpreters and to be communicated with in writing.

45.     Walmart engaged in unlawful employment practices at its Olathe, Kansas store in violation of Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5)(B), by refusing to provide reasonable accommodation to Montoya's known physical limitations.

46.     Providing qualified ASL interpretation and effective written communication as a reasonable accommodation would have enabled Montoya

to safely perform the overnight stocker job and would not have imposed an undue hardship on the operation of Walmart's business.

47.     Providing qualified ASL interpretation and effective written communication as a reasonable accommodation would have enabled Montoya to enjoy equal benefits and privileges of employment as were enjoyed by his coworkers without disabilities and would not have imposed an undue hardship on the operation of Walmart's business.

48.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Montoya.

49.     The effect of the practices complained of herein has been to deprive Montoya of equal employment opportunities because of his disabilities.

50.     As a direct and proximate result of the practices complained of in the foregoing paragraphs, Montoya has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT II

## (ADA – Failure to Accommodate Moore)

51.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

52.     Moore is a qualified individual with a disability as defined in the ADA because he is deaf, which substantially limits his hearing.

53.     Walmart was aware of Moore's deafness.

54.     Moore is qualified and able, with or without reasonable accommodation, to perform the essential functions of the position of overnight stocker at Walmart.

55.     Moore requested reasonable accommodations, namely, ASL interpreters and to be communicated with in writing.

56.     Walmart engaged in unlawful employment practices at its Olathe, Kansas store in violation of Section 102(a) and (b)(5)(B) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5)(B), by refusing to provide reasonable accommodation to Moore's known physical limitations.

57.     Providing qualified ASL interpretation and effective written communication as a reasonable accommodation would have enabled Moore to safely perform the overnight stocker job and would not have imposed an undue hardship on the operation of Walmart's business.

58.     Providing qualified ASL interpretation and effective written communication as a reasonable accommodation would have enabled Moore to enjoy equal benefits and privileges of employment as were enjoyed by his coworkers without disabilities and would not have imposed an undue hardship on the operation of Walmart's business.

59.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Moore.

60.     The effect of the practices complained of herein has been to deprive Moore of equal employment opportunities because of his disabilities. As a direct and proximate result of the practices complained of in the foregoing paragraphs, Moore has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT III

### (ADA – Constructive Discharge Against Montoya)

61.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

62.     Walmart's repeated failure to provide reasonable accommodation for Montoya's known disability created an intolerable working environment

in which a reasonable person in his position would have felt compelled to resign.

63.     Walmart engaged in unlawful employment practices in violation of Section 102(a) and (b)(5) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5), by constructively discharging Montoya because of disability.

64.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Montoya.

65.     The effect of the practices complained of herein has been to deprive Montoya of equal employment opportunities because of his disability.

66.     As a direct and proximate result of the practices complained of in the foregoing paragraphs, Montoya has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## COUNT IV

### (ADA – Constructive Discharge Against Moore)

67.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

68.    Walmart's repeated failure to provide reasonable accommodation for Moore's known disability created an intolerable working environment in which a reasonable person in his position would have felt compelled to resign.

69.    Walmart engaged in unlawful employment practices in violation of Section 102(a) and (b)(5) of Title I of the ADA, 42 U.S.C. §12112(a) and (b)(5), by constructively discharging Moore because of disability.

70.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Moore.

71.    The effect of the practices complained of herein has been to deprive Moore of equal employment opportunities because of his disability.

72.    As a direct and proximate result of the practices complained of in the foregoing paragraphs, Moore has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Walmart, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to employ a qualified individual with a

disability because he or she needs a reasonable accommodation to perform the duties of his or her position.

B.     Order Walmart to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Walmart to make whole Montoya by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place instatement of Montoya.

D.     Order Walmart to make whole Montoya by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.     Order Walmart to make whole Montoya by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

F.     Order Walmart to pay Montoya punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.     Order Walmart to make whole Moore by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place instatement of Moore.

H.     Order Walmart to make whole Moore by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

I.     Order Walmart to make whole Moore by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

J.     Order Walmart to pay Moore punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

K.     Grant such further relief as the Court deems necessary and proper in the public interest.

16

L.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

## PLACE OF TRIAL

The Commission requests Kansas City, Kansas as the place of trial.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

LISA MORELLI
Acting Associate General Counsel

ANDREA G. BARAN
Regional Attorney, Mo. Bar # 46520

JOSHUA M. PIERSON
Supervisory Trial Attorney,
Kan. # 29095

/s/ *Megan Lowe Stiles*
MEGAN LOWE STILES
Trial Attorney, D.Kan #78642
Kansas City Area Office
400 State Ave., Ste. 905
Kansas City, KS 66101
(913) 340-8828
Fax No.: (913) 551-6957
megan.lowe.stiles@eeoc.gov

Andrea.baran@eeoc.gov
Joshua.pierson@eeoc.gov

DAYNA F. DECK
Senior Trial Attorney, D.Kan. #78505
St. Louis District Office
1222 Spruce Ave. Room 8.100
St. Louis. MO 63103
314-798-1904
dayna.deck@eeoc.gov

**ATTORNEYS FOR THE
COMMISSION**